Andrew Rubin for Petitioner. Mr. Cooks, may it please the court, and this probably will please the court, I intend to be a lot briefer than ten minutes. I think this case really does boil down. Mr. Glassman, the representative of the state, and I have gone through this case for a long time, from state court through federal court, and I think we both agree that if the case is looked at as a severance case, I might as well go back to West Los Angeles and not bother you at all. If it's looked at, on the other hand, as a case before the joinder was actually effectuated, then I think we have a different matter. And I want to talk just briefly about a couple of things. One is this concept pointed out by the district court of the battling constitutional rights which are not equal, the Feretta right and the Gideon right. And although when we start out looking at them, they're not equal, that is Gideon is an absolute right, Feretta is a conditional right. It's only a conditional right in its granting. It's not a conditional right once it's granted. In other words, it can be denied if it's asked for untimely. Actually, it is conditional once granted. But it's only conditional if the person is not obeying court rules, if the person is disruptive. That's the only way one can remove him from being representing himself under Feretta. And there's nothing like that in this case, no evidence of that at all. And so I think it's really a false straw man to set up to say these are not equal rights. In this particular case, they were. And, again, this is the unusual circumstance in which the prosecution, either intentionally or for other reasons, brought these cases separately. They were separate. Kennedy. Is there any evidence they intently did this by intent, that there's bad faith? Are you charging? Carvin. No. No. Absolutely not. Not that it's bad faith. And I think they wouldn't have gained anything by filing them separately. Kennedy. Well, I thought the record was such that you weren't raising that issue. So do I understand correctly that you concede that the government could have brought the two counts together initially? Carvin. Absolutely. No dispute. Kennedy. So something of some right attaches because they brought them separately and then tried to consolidate them? Carvin. Well, I wouldn't phrase it exactly that way. But, yes. Kennedy. Well, it'd have to be something attaching to prevent them from doing what they could have done initially. Carvin. That's right. And what is that right that attaches? Carvin. Okay. The right that attaches is that when the first case was filed, let me give you an alternate scenario to what happened in this case. And that is case one, the Fleming case is filed. The defendant is represented by counsel. Case two, the Suarez case is filed. It's in a different courtroom, and he's assigned a different deputy public defender. Okay? The cases are then, there's a motion to join them. Okay? He's not entitled to a specific lawyer. He's entitled under Gideon, he's entitled to a lawyer. He couldn't object and say, hey, you're forcing me to choose between public defenders. He also couldn't at that point say, well, wait a second, I want to represent myself on one of these and not on the other one. But the circumstance that we have and the reason that this case is just different is that for valid reasons, and there's been no argument, no positing that he asked to represent himself in the Fleming case to play with the system. He did it for a legitimate reason, and nobody has claimed ever anything else. Once he was representing himself in the Fleming case, he had the right to do that. And I think we agree that he had the right, I hope you agree, he had the right to do that. And once he's granted Faretta rights, they cannot be taken away unless he's unruly or not following court rules. Now the Suarez case comes up, and because he's representing himself in the one case, had he asked to represent himself in Suarez, could the cases have been consolidated? Absolutely. But he had appointed counsel. So we now have two separate cases, okay? It's confused a little bit because it's in the same courthouse. But they're two separate cases. Could they normally be joined? Yes, they could. Not a problem. But because he's exercising these two independent constitutional rights that conflict with each other, and they conflict with each other because once they're joined, he no longer has this independent right to represent himself and not on the two counts. The joinder cannot take place. Or it shouldn't have taken place. It cannot constitutionally take place. There's a question that's asked. I think it's in the State court originally. Maybe it's in the district court, too. Well, what would have happened if he'd given up his right in the Fleming case to self-representation? The cases are joined. Could he then raise up and say, hey, I want to represent myself in the Fleming case again? No, he couldn't. Because once they're properly joined, he has no right to split his representation. Our whole argument is that the courts have looked at this case from the wrong point. They've looked at it from the post-joinder situation and looked at it both ways and said, well, he couldn't get a severance based on what he said, and I agree, he couldn't. But that meant that the joinder was proper. With that, I disagree. Because he has these two competing rights. And, by the way, I'm not even sure it matters whether they're exactly co-equal in their force. They are, they clearly are in conflict. And I think that, you know, I've cited, you know, Bruton and some other cases that talk about, well, you just can't force somebody to, in certain circumstances, you can't force somebody to choose between rights. Sometimes you can. I think you're making a very interesting argument. And, as you say, it's a novel and unusual case. So how do we deal with the Teague rule? You don't ask me the question as to the way you deal with it. I don't know. The answer is, well, here's the answer, I guess, that I can give with regard to the Teague rule, because as much as I would love to benefit the three defendants in the next 50 years who will have this problem, but not poor Mr. Cook, who's in prison for 65 years and four months to life, is that I think this is just, a straight out of Feretta, Gideon. This is not new. This is just, this should have been clear to everybody in the first place. I mean, look, it's the best I can do, you know. If you want better, you know, find somebody else, I guess, to represent. Mr. Cook's going forward. I can't do better. But would there have been a problem if the state had looked ahead and saw this coming, and so they dismissed both cases without prejudice, refile in a joint indictment, and then he's in court on one case with two counts. Would that have been a problem? Well, of course, if I were his lawyer, I would have jumped up and claimed retaliatory or discriminatory prosecution. But I would have lost. And if I were the judge, I would have ruled against that. And the answer to your question is, assuming there were no earlier dismissals in the case, because in state court, there's this two-dismissal rule, and so if there's a one- But assuming that's not that problem, I think the state could have done that, yes. So this is somewhat the same thing done in a different fashion, isn't it? In other words, aren't we kind of elevating form over substance here? If they could do it by dismissal and refiling, why can't they do it by simply consolidating? Because to dismiss and refile, assuming they had done that, that's legitimate. But to combine the cases, which then forces them to choose between these constitutional rights. I mean, everything is situational, isn't it? I mean, if somebody comes up in the bottom of the ninth inning and hits a double with nobody on base, no run score. But if there are people on base, run score. Everything is situational. And so I think that to ask the question, could it have been done differently and legally? Yeah, it could have. In your way, could it have been done that way legally? Absolutely. I was just looking at the practical consequence. In other words, asking myself, what difference does it make if you get to the same position, if the State had filed them together, either originally or later on a refiling, or simply do it after they're filed? What's the difference, practically speaking? Well, if one looks at the end game, sort of, one can say there is no difference. But, again, I'm trying to look at it from the point of view of what happened at the time. And, you know, I don't want to be trite and I don't want to be cute, but, you know, in the end we're all dead. And so it's like, what does it matter what we're doing along the way? And I think it does matter what we're doing along the way. So I think it matters when the case came up at the time it came up and there's this constitutional conflict, it matters what happened at that time. You know, can he be retried if this Court reverses? Sure. Can they file the cases together? Can they force him in this retrial to take counsel or, you know, to represent himself? Or, heaven forbid, ask me to be his lawyer? Yeah. They can do that. But I'm trying to look at it from the point at which the violation happened. Well, I'm four seconds under, so I was a little optimistic. I apologize. Well, thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court. The question that the State court in this case, both the State trial court and the State appellate court, were required to address was whether or not a criminal defendant's assertion of his right to self-representation in one case precluded counsel that the defendant had elected in a companion case properly joined under State law. And as has been conceded in the brief in here today, there is no dispute in this case that these cases were properly and appropriately joined under State law. And in resolving that question, as the Petitioner also concedes, there simply is no precedent really of any court, much less of the Supreme Court, that precludes the joinder of cases in these circumstances. And that is the extent of the issue presented in this case. And so while the defendant or the Petitioner can envision alternative scenarios that in his view would validate or vindicate his Faretta rights differently, that is not the standard in a case that comes before the Court under the restrictions of the AEDPA and in light of the case Judge Wardlaw has referenced, Teague v. Lane. There simply is no authority remotely resembling this case that would grant relief. And the point I think that Judge Nelson made is that if ultimately we're addressing whether or not this procedure is, you know, quote, unquote, fair or appropriate, it shouldn't make any possible difference the timing of the joinder. The issue is whether or not this defendant has a right to preclude the joinder of properly joined cases by asserting one constitutional right over another. To argue that there's a choice that has to be made, the assertion of most constitutional rights involves a choice. The assertion of the right to counsel is a waiver of the right to self-representation and vice versa. So at the end of the day, as the Petitioner concedes I think three times in his reply brief, the Supreme Court has not addressed, much less prohibited, what occurred here, and that's the question that's asked in the habeas corpus context. Unless the Court has any questions, I'm prepared to submit them. What's your view on Teague? Well, that, Your Honor, in light of the fact that there is no authority remotely allowing this, none cited, by the way, that the best that the Petitioner can do is to argue by implication Feretta and Gideon v. Raynard are violated here in light of the fact that the Supreme Court and no other court have adopted any kind of argument allowing that or enforcing, I should say, that position in this case would constitute a new rule in violation of Teague. And whether the Court looks at it as a Teague question or simply as an AEDPA question, because the statute, I've always thought, essentially asks the Court or requires the Court to make the same determination, namely what has the Supreme Court decided on this point. However, however the Court proceeds, the answer remains the same, and that is there is no such authority, and that's why none was cited. Thank you. All right. Cooks v. Nolan is submitted. Is Pulliam ready to go? Not here? Why don't you check on her? I'll take up the next case, Phillips v. Henry. Thank you.
judges: Wallace, T. G. Nelson, Wardlaw